**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| GENESIS MOSES and PAMELA HUNT Individually and on Behalf of All Others Similarly Situated,<br><br>                  Plaintiff,<br><br>          v.<br><br>Pacific Market International, LLC,<br><br>               Defendant. | Case No.:  3:24-cv-00247<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

      Genesis Moses and Pamela Hunt ("Plaintiffs"), individually and on behalf of all others similarly situated, respectfully submits the following for her Complaint against Defendant Pacific Market International, LLC, ("PMI", or "Defendant") and alleges upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## <u>NATURE OF THE ACTION</u>

    1.    Plaintiffs bring this class action lawsuit as individuals who purchased a stainless steel "Stanley" brand cup produced by Defendant (hereinafter "Products" or "Cups")[1] for normal household use.

    2.    Unfortunately, the Products are defective because they contain lead ("Lead Defect").[2]

    3.    The Products were formulated, designed, manufactured, marketed, advertised,

---

[1] https://www.today.com/health/news/stanley-cups-lead-rcna135513 (last accessed February 26, 2024)
[2] *Id.*

distributed, by Defendant.[3]

4.    The Stanley website discloses that the Cups' sealing material includes lead.[4]

5.    Through marketing and sale, Defendant represented that the Products are safe and effective for their intended use as drinkware.

6.    Stanley's website states: "Stanley has created reusable, Built For Life™ products for over 100 years, reducing demand for disposable products that end up in waste and water streams. But it's not just about what we make, it's also about how we make it. Stanley is committed to sustainable practices across our entire supply chain, from manufacturing to recycled materials to packaging."[5]

7.    Other manufacturers formulate, produce, and sell non-poisonous drinkware with formulations and production methods that do not cause the product to poison the user, which is evidence that this poisoning risk inherent with Defendant's Products is demonstrably avoidable.

8.    Feasible alternative formulations, designs, and materials are currently available and were available to Defendant at the time the Products were formulated, designed, and manufactured.

9.    At the time of their purchases, Defendant did not notify Plaintiffs, and similarly situated consumers, of the Products' risk of lead poisoning through the product labels, instructions, the ingredients list, other packaging, advertising, or in any other manner, in violation of state and federal law.

10.    Plaintiffs purchased the Product, while lacking the knowledge that Product could poison those who use the product, thus causing serious harm to those who use such Products.

11.    Because Plaintiffs were injured by the Products and all consumers purchased the

---

[3] https://www.stanley1913.com/ (last accessed February 26, 2024)
[4] https://support.stanley1913.com/en/support/solutions/articles/69000850923-do-stanley-products-contain-lead-
[5] https://www.stanley1913.com/pages/about-stanley (last accessed February 26, 2024)

worthless and dangerous Products, which they purchased under the presumption that the Products were safe, they have suffered losses.

12.     As a result of the above losses, Plaintiff seeks damages and equitable remedies.

## PARTIES

13.     Plaintiff Genesis Moses is a resident and citizen of Charlotte, North Carolina which is within Mecklenburg County.

14.     Plaintiff Moses a Cup and used the Product in February of 2024.

15.     Plaintiff Pamela Hunt is a resident and citizen of Lumberton, North Carolina which is within Robeson County.

16.     Plaintiff Hunt purchased and used two Cups in September of 2023 and December of 2023.

17.     Defendant is a Washington based corporation that specializes in the sale of drinkware.

18.     Defendant produces, markets, distributes, drinkware.[6]

19.     Defendant has its headquarters at 2401 Elliot Ave. Fl. 4 in Seattle, Washington, 98121.

20.     Upon information and belief, the planning and execution of the advertising, marketing, labeling, packaging, testing, and/or corporate operations concerning the Products and the claims alleged herein was primarily carried out at Defendant's headquarters and facilities within Washington.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d) because: (1) there are 100 or more putative Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal

---

[6] https://www.stanley1913.com/ (last accessed February 26, 2024)

diversity because Plaintiff and Defendant are citizens of different states.

22.    This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

23.    This Court has personal jurisdiction over Defendant because Defendant has substantial aggregate contacts with this District, including engaging in conduct in this District that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and because they purposely availed themselves of the laws of the United States and North Carolina and has caused its products to be disseminated in this District.

24.    Venue in this District and Court is proper pursuant to 28 U.S.C. §1391(b) because Plaintiffs reside in this District, a substantial part of the conduct or omissions giving rise to Plaintiffs' claims occurred in this District, Defendant transacts business in this District, and Defendant has intentionally availed itself of the laws and markets within this District.

## FACTUAL ALLEGATIONS

25.    Defendant is a well-established corporation founded in 1913, known for its production, distribution, and importation of sustainable products, including the Products at hand.[7]

26.    Defendant also distributes drinkware products, for adults and children, worldwide.[8]

[space left intentionally blank]

---

[7] https://www.stanley1913.com/pages/about-stanley (last accessed February 26, 2024)
[8] *Id.*



**The Products**

27.     The Products at hand are drinkware made for daily use. In fact, PMI states that "You should never have to replace an item because of one part. We offer items that extend the life of your gear like our [Adventure Quencher Travel Tumbler Straws](#)."[9]

28.     Defendant has heavily advertised its products for outdoor adventures, including by using the term "Adventure" in several of its products (such as the above "Adventure Quenture"). Yet Defendant knew that the seal could be exposed if the product was damaged from drops, hits, and

---

[9] [https://www.stanley1913.com/pages/sustainability](https://www.stanley1913.com/pages/sustainability) (last accessed February 26, 2024)

other damage, especially during outdoor activities such as hiking, running, and similar activities.

29. Unfortunately, the Products contain lead, a poisonous element that can cause serious health effects in humans and animals. Lead is especially dangerous to babies and young children.[10]

30. PMI admitted on its website that its popular Stanley-branded Cups use lead to "seal the vacuum installation at the base" of the Cups.[11] This seal is then covered with a layer of steel, which PMI admits may come off "due to ordinary use" and expose the seal containing the lead.[12]

### Defendant's Misrepresentations and Omissions are Actionable

31. Plaintiffs bargained for drinkware that was safe to use. Defendant's Products were, and still are, unsafe due to lead poisoning.

32. As a result of the risk of lead poisoning, Plaintiffs, and all others similarly situated, were deprived the basis of their bargain given that Defendant sold them a product containing poisonous lead.

33. This dangerous lead poisoning risk inherent to the Products renders the Products unmerchantable and unfit for their normal intended use as safe to use drinkware.

34. The Products are not fit for their intended use by humans as they expose consumers to a poisonous element, lead.

35. Plaintiffs are further entitled to damages for the injury sustained in being exposed to such dangerous lead, damages related to Defendant's conduct, and injunctive relief.

36. Plaintiffs seek to recover damages because the Products are adulterated, defective, worthless, and unfit for safe human use due to the lead contained within the Products.

---

[10] https://my.clevelandclinic.org/health/diseases/11312-lead-poisoning (last accessed February 26, 2024)
[11] https://support.stanley1913.com/en/support/solutions/articles/69000850923-do-stanley-products-contain-lead- (last accessed February 26, 2024)
[12] *Id.*

37. Defendant engaged in fraudulent, unfair, deceptive, misleading, and/or unlawful conduct stemming from its omissions surrounding the risk of lead poisoning affecting the Products.

38. Indeed, no reasonable consumer, including Plaintiffs, would have purchased the Products had they known of the material omissions of material facts regarding the possibility of lead poisoning.

## PLAINTIFFS' FACTUAL ALLEGATIONS

39. Plaintiff Moses bought a Stanley cup for personal household use, that being use as drinkware, near her residence in Charlotte, North Carolina.

40. Plaintiff Moses is still in possession of Defendant's Product.

41. Plaintiff Hunt bought a Stanley cup for personal household use, that being use as drinkware, near her residence in Lumberton, North Carolina.

42. Plaintiff Hunt is still in possession of Defendant's Product.

43. Plaintiffs intended to buy a stainless-steel cup for normal household use, but instead received a contaminated Product, which contained lead.

44. Nowhere on the Products' packaging did Defendant disclose that the Products could poison the user.

45. If Plaintiffs had been aware of the risk of poisoning in the Products, they would not have purchased the Products, or would have paid significantly less.

46. As a result of Defendant's actions, Plaintiffs have incurred damages.

47. If the Products and packaging were reformulated to be safe and avoid lead poisoning, Plaintiffs would choose to purchase the Products again in the future.

## CLASS ACTION ALLEGATIONS

48. Plaintiffs bring this case as a class action pursuant to Federal Rule of Civil Procedure 23

on her own behalf and as the Class representatives on behalf of the following:

**Nationwide Class:** All persons within the United States who purchased the Products within the applicable statute of limitations.

**North Carolina Subclass:** All persons within North Carolina who purchased the Products within the applicable statute of limitations.

49.    The Nationwide Class and North Carolina Subclass shall collectively be referred to herein as the "Classes."

50.    Plaintiffs reserve the right to amend the Class definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

51.    Excluded from the Classes are governmental entities, Defendant, its officers, directors, affiliates, legal representatives, and employees.

52.    This action has been brought and may be maintained as a class action under Federal Rule of Civil Procedure 23.

53.    **Numerosity** – Federal Rule of Civil Procedure 23(a)(1). The Classes numbers at least in the thousands of persons. As a result, joinder of all Class members in a single action is impracticable. Class members may be informed of the pendency of this class action through a variety of means, including, but not limited to, direct mail, email, published notice, and website posting.

54.    **Existence and Predominance of Common Questions of Law and Fact** – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3). There are questions of fact and law common to the Classes that predominate over any question affecting only individual members. Those questions, each of which may also be certified under Rule 23(c)(4), include without limitation:

a.    whether Defendant's advertising, merchandising, and promotional materials

directed to Plaintiffs were deceptive regarding the risks posed Defendant's Products;

b.     whether Defendant made representations regarding the safety of the Products;

c.     whether Defendant omitted material information regarding the safety of the Products;

d.     whether Defendant's Products were merchantable;

e.     whether Defendant violated the consumer protection statutes invoked herein;

f.     whether Defendant's conduct alleged herein was fraudulent; and

g.     whether Defendant was unjustly enriched by sales of the Products.

55.    The questions set forth above predominate over any questions affecting only individual persons concerning sales of Defendant's Products throughout the United States and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of Plaintiffs' claims.

56.    **Typicality** – Federal Rule of Civil Procedure 23(a)(3). Plaintiffs' claims are typical of those of the Classes in that the Class members uniformly purchased Defendant's Products and were subjected to Defendant's uniform merchandising materials and representations at the time of purchase.

57.    **Superiority** – Federal Rule of Civil Procedure 23(b)(3). A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate actions by individual Class members could create a risk of inconsistent adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of Class members to protect their interests. In addition, it would be impracticable and undesirable for each member of the Classes who suffered an economic loss to bring a separate action. The maintenance of separate actions would place a substantial and unnecessary burden on the courts

and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class members.

58. **Adequacy** – Federal Rule of Civil Procedure 23(a)(4). Plaintiffs are adequate representatives of the Classes because they are a member of the Classes and their interests do not conflict with the interests of the Classes that they seek to represent. The interests of the members of the Classes will be fairly and adequately protected by Plaintiffs and their undersigned counsel. Counsel is experienced in the litigation of civil matters, including the prosecution of consumer protection class action cases.

59. **Insufficiency of Separate Actions** – Federal Rule of Civil Procedure 23(b)(1). Absent a representative class action, members of the Classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

60. **Declaratory and Injunctive Relief** – Federal Rule of Civil Procedure 23(b)(2). Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole. In particular, Plaintiffs seeks to certify Classes to enjoin Defendant from selling or otherwise distributing the Products as labeled until such time that Defendant can demonstrate to the Court's satisfaction that the Products confer the advertised benefits and are otherwise safe to use as intended.

61. Additionally, the Classes may be certified under Rule 23(b)(1) and/or (b)(2) because:

    a. The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes that would establish incompatible standards of conduct for the Defendant;

    b. The prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

    c. Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the members of the Classes as a whole.

## CAUSES OF ACTION

## COUNT I
### Unjust Enrichment
### (On Behalf of the Nationwide Class and, alternatively, the Subclass)

62. Plaintiffs incorporate the allegations set forth in Paragraphs 1-57 as though set forth fully herein.

63. Plaintiffs, and the other members of the Classes, conferred benefits on Defendant in the form of monies paid to purchase Defendant's defective and worthless Products. These monies were not gifts or donations but were given in exchange for the Products.

64. Defendant voluntarily accepted and retained these benefits.

65. Because this benefit was obtained unlawfully, namely by selling and accepting

compensation for Products unfit for human use, it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

66.     Defendant received benefits in the form of revenues from purchases of the Products to the detriment of Plaintiffs, and the other members of the Classes, because Plaintiffs, and members of the Classes, purchased mislabeled products that were not what Plaintiffs and the Classes bargained for and were not safe and effective, as claimed.

67.     Defendant has been unjustly enriched in retaining the revenues derived from the purchases of the Products by Plaintiffs and the other members of the Classes. Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Products was misleading to consumers, which caused injuries to Plaintiffs, and members of the Classes, because they would have not purchased the Products had they known the true facts.

68.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiffs and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiffs and members of the Nationwide Class for its unjust enrichment, as ordered by the Court.

## COUNT II
### Breach of Express Warranty
### (On Behalf of the Nationwide Class and, alternatively, the Subclass)

69.     Plaintiffs incorporate the allegations set forth in Paragraphs 1-57 as though set forth fully herein.

70.     Plaintiffs, and each member of the Classes, formed a contract with Defendant at the time they purchased the Products.

71.     The terms of the contract include the promises and affirmations of fact, that the products were safe to use, made by Defendant on the Products' packaging and through marketing and advertising.

72.    This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiffs and the members of the Classes and Defendant.

73.    As set forth above, Defendant purports through its advertising, labeling, marketing, and packaging, to create an express warranty that the Product is safe for its intended use as drinkware.

74.    Plaintiffs and the members of the Classes performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

75.    Defendant breached express warranties relating to the Products and their qualities because Defendant's Product possessed the capability to poison the users, even when correctly used, at the time of purchase and the Products do not conform to Defendant's affirmations and promises described above.

76.    Plaintiffs and each of the members of the Classes would not have purchased the Products had they known the true nature of the risk of the Product impaling or using those who used the Products.

77.    As a result of Defendant's breach of warranty, Plaintiffs and each Class Member suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## COUNT III

### Breach of Implied Warranty
### (On Behalf of the Nationwide Class and, alternatively, the Subclass)

78.    Plaintiffs incorporate the allegations set forth in Paragraphs 1-57 as though set forth fully herein.

79.    Defendant is a merchant and was at all relevant times involved in the manufacturing, distributing, warranting, and/or selling of the Products.

80.    The Products are "goods" under the relevant laws, and Defendant knew or had reason to know of the specific use for which the Products, as goods, were purchased.

81.    The implied warranty of merchantability included with the sale of each Product means that Defendant guaranteed that the Products would be fit for the ordinary purposes for which Cups are used and sold and were not otherwise injurious to consumers. The implied warranty of merchantability is part of the basis for the benefit of the bargain between Defendant, and Plaintiffs and the Class Members.

82.    Defendant breached the implied warranty of merchantability because the Products are not fit for their ordinary purpose of providing reasonably reliable and safe drinkware, particularly for children, because the Products have a risk of poisoning. Therefore, the Products are not fit for their particular purpose of drinkware.

83.    Defendant's warranty expressly applies to the purchaser of the Products, creating privity between Defendant and Plaintiffs and Class Members.

84.    However, privity is not required because Plaintiffs and Class Members are the intended beneficiaries of Defendant's warranties and its sale through retailers. Defendant's retailers were not intended to be the ultimate consumers of the Products and have no rights under the warranty agreements. Defendant's warranties were designed for and intended to benefit the consumer only, including Plaintiffs and Class Members.

85.    Defendant has been provided sufficient notice of its breaches of implied warranties associated with the Products. Defendant was put on constructive notice of its breach through its review of consumer complaints and other reports.

86.    Had Plaintiffs, Class Members, and the consuming public known that the Products could impale them and cause physical harm, they would not have purchased the Products or would have

paid less for them.

87.     As a direct and proximate result of the foregoing, Plaintiffs and Class Members suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

**COUNT IV**
**Breach of the Implied Warranty of Merchantability**
**(On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)**

88.     Plaintiffs incorporate the allegations set forth in Paragraphs 1-57 as though set forth fully herein.

89.     Plaintiffs brings this claim against Defendant, on behalf of themselves and the other members of the Nationwide Class, and, alternatively, the State subclass pled in Paragraph 44 (the "Classes").

90.     Defendant is a merchant engaging in the sale of goods to Plaintiffs and the Classes.

91.     There was a sale of goods from Defendant to Plaintiffs and the Classes.

92.     As the developer, manufacturer, marketer, distributor, and/or seller of the defective Products, Defendant impliedly warranted to Plaintiffs and the Classes that its Products were fit for their intended purpose in that they would be safe for Plaintiffs and the Classes to use as a drinkware.

93.     Contrary to these representations and warranties, the Products were not fit for their ordinary use, and did not conform to Defendant's affirmations of fact and promises as use of the Products was accompanied by the risk of adverse health effects that do not conform to the packaging.

94.     Defendant breached the implied warranty in the contract for the sale of the Products by

knowingly selling to Plaintiffs and the Classes a product that Defendant knew would expose Plaintiffs and the Classes to significant health risks, thus meaning Defendant knew that the Products were not fit for their intended purpose as safe to use drinkware.

95.    Defendant was on notice of this breach, as they were made aware of the adverse health effects caused by lead poisoning that can result from the use of their Products.

96.    Plaintiffs and the Classes did not receive the goods as bargained for because the goods they received were not merchantable as they did not conform to the ordinary standards for goods of the same average grade, quality, and value.

97.    Plaintiffs and members of the Classes are the intended beneficiaries of Defendant's implied warranties.

98.    The Products were not altered by Plaintiffs or the members of the Classes.

99.    Plaintiffs and members of the Classes used the Products in the ordinary manner in which such Cups were intended to be used.

100.   The Products were defective when they left the exclusive control of Defendant.

101.   The Products were defectively designed and/or manufactured and unfit for their intended purpose as safe to use drinkware, and Plaintiffs and members of the Classes did not receive the goods that they bargained for.

102.   Plaintiffs and members of the Classes purchased the Products that contained the Defect, which was undiscoverable by them at the time of purchase and at any time during the class period.

103.   As a result of the defect in the Products, Plaintiffs and members of the Classes have suffered damages including, but not limited to, the cost of the defective product, loss of use of the product and other related damage.

104. Defendant breached the implied warranty of merchantability to the Plaintiffs and Class members.

105. Thus, Defendant's attempt to limit or disclaim the implied warranties in a manner that would exclude coverage of the Defect is unenforceable and void.

106. Plaintiffs and Class members have been damaged by Defendant's breach of the implied warranties.

107. Plaintiffs and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

**COUNT V**
**Fraudulent Concealment**
**(On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)**

108. Plaintiffs incorporate the allegations set forth in Paragraphs 1-57 as though set forth fully herein.

109. Plaintiffs bring this claim against Defendant, on behalf of themselves and the other members of the Nationwide Class, and, alternatively, the State subclass pled in Paragraph 44 (the "Classes").

110. Defendant had a duty to disclose material facts, at the time of sale, to Plaintiffs and the Classes given their relationship as contracting parties and intended users of the Products.

111. Defendant also had a duty to disclose material facts to Plaintiffs and the Classes, namely that it was in fact manufacturing, distributing, and selling harmful products unfit for human use, because Defendant had superior knowledge such that the transactions without the disclosure were rendered inherently unfair.

112. During this time, Plaintiffs, and members of the Classes, were using the Products without

knowing the Products could poison the drinkware user.

113. Defendant failed to discharge its duty to disclose these materials facts.

114. In so failing to disclose these material facts to Plaintiffs and the Classes, Defendant intended to hide from Plaintiffs and the Classes that they were purchasing and consuming the Products with harmful defects that was unfit for human use, and thus acted with scienter and/or an intent to defraud.

115. Plaintiffs and the Classes reasonably relied on Defendant's failure to disclose insofar as they would not have purchased the defective Products manufactured and sold by Defendant had they known they possessed this risk of lead poisoning.

116. As a direct and proximate cause of Defendant's fraudulent concealment, Plaintiffs, and the Classes, suffered damages in the number of monies paid for the defective Products.

117. As a result of Defendant's willful and malicious conduct, punitive damages are warranted.

<u>COUNT VI</u>
**Strict Liability – Failure to Warn**
**(On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)**

118. Plaintiffs incorporate the allegations set forth in Paragraphs 1-57 as though set forth fully herein.

119. Plaintiffs bring this claim against Defendant, on behalf of themselves and the other members of the Nationwide Class, and, alternatively, the State subclass pled in Paragraph 44 (the "Classes").

120. Defendant had a duty to warn Plaintiffs and the Class members regarding the Defect and the true risks associated, that being lead poisoning, with the Products.

121. Defendant was in a superior position to know of the Defect, yet, as outlined above, chose

to do nothing when the defect became known to them.

122. Defendant failed to provide adequate warnings regarding the risks of the Products after knowledge of the Defect was known only to them.

123. Defendant had information regarding the true risks but failed to warn Plaintiff and members of the Classes to strengthen their warnings.

124. Despite their knowledge of the Defect and obligation to unilaterally strengthen the warnings, Defendant instead chose to actively conceal this knowledge from the public.

125. Plaintiffs and members of the Classes would not have purchased, chosen, and/or paid for all or part of the Products if they knew of the Defect and the risks of purchasing the Products.

126. This Defect proximately caused Plaintiffs' and Class members' damages.

127. The Plaintiffs and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## COUNT VII
### Strict Liability – Design Defect
**(On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)**

128. Plaintiffs incorporate the allegations set forth in Paragraphs 1-57 as though set forth fully herein.

129. Plaintiffs bring this claim against Defendant, on behalf of themselves and the other members of the Nationwide Class, and, alternatively, the State subclass pled in Paragraph 44 (the "Classes").

130. The design of the Products was defective and unreasonably dangerous.

131. The risk of lead poisoning contained within the Products creates unreasonable danger.

132. The design of the Products rendered them not reasonably fit, suitable, or safe for their

intended purpose.

133. The risk of lead poisoning contained within the Products outweighed the benefits and rendered the Products unreasonably dangerous.

134. There are other Products and other similar cups that do not pose the risk of lead poisoning, meaning that there were other means of production available to Defendant.

135. The Products were unreasonably unsafe, and the Products should have had stronger and clearer warnings or should not have been sold in the market.

136. The Products did not perform as an ordinary consumer would expect.

137. Plaintiffs and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## COUNT VIII
### Negligent Failure to Warn
### (On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)

138. Plaintiffs incorporate the allegations set forth in Paragraphs 1-57 as though set forth fully herein.

139. Plaintiffs bring this claim against Defendant, on behalf of themselves and the other members of the Nationwide Class, and, alternatively, the State subclass pled in Paragraph 44 (the "Classes").

140. Defendant owed Plaintiffs and Class members a duty of care and to warn of any risks associated with the Products.

141. Defendant knew or should have known of the defect but failed to warn Plaintiffs and members of the Classes.

142. Plaintiffs had no way of knowing of the Product's latent defect as an ordinary consumer

would be unable to discover the Product could poison the user.

143. Defendant's breach of duty caused Plaintiffs and Class members economic damages and injuries in the form of lost value due to lead poisoning.

144. Plaintiffs and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## COUNT IX
### Negligent Design Defect
#### (On Behalf of the Nationwide Class, or alternatively, on behalf of the Subclass)

145. Plaintiffs incorporate the allegations set forth in Paragraphs 1-57 as though set forth fully herein.

146. Plaintiffs brings this claim against Defendant, on behalf of themselves and the other members of the Nationwide Class, and, alternatively, the State subclass pled in Paragraph 44 (the "Classes").

147. Defendant owed Plaintiffs and the Classes a duty to design the Products in a reasonable manner.

148. The design of the Products was defective and unreasonably dangerous, causing exposure to materials with possibly deadly effects. Thus, the Products are now worthless.

149. The design of the Products caused them to be not fit, suitable, or safe for their intended purpose. The dangers of the Products outweighed the benefits and rendered the products unreasonably dangerous.

150. There are other stainless steel cups that do not poison the users.

151. The risk/benefit profile of the Products was unreasonable, and the Products should have had stronger and clearer warnings or should not have been sold in the market.

152. The Products did not perform as an ordinary consumer would expect.

153. The Defendant's negligent design of the Products was the proximate cause of damages to the Plaintiffs and the Class members.

154. Plaintiffs and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## COUNT X
### Negligence

155. Plaintiffs incorporate the allegations set forth in Paragraphs 1-57 as though set forth fully herein.

156. Defendant owed a duty to consumers to produce a product that was safe for its intended use.

157. Defendant breached this duty by producing a product that was dangerous for its intended use. Defendant knew or should have known that the drinkware with such a lead poisoning would cause injuries once exposed to humans and thus be worthless as a safe-to-use cup.

158. As a direct result of this breach, Plaintiffs suffered injury in that Plaintiffs have been deprived of their benefit of the bargain. Plaintiffs' injuries were caused in fact by Defendant's breach. But for Defendant's negligent manufacture and improper oversight, Plaintiffs would not have been injured.

159. Further, Plaintiffs' injuries were proximately caused by Defendant's breach. It is foreseeable that a poorly designed cup containing lead would cause injury and lead poisoning, and it is foreseeable that a user would lose their benefit of the bargain if they purchased a dangerous and worthless cup.

160. Plaintiffs suffered damages in an amount to be determined at trial and Plaintiffs are entitled to any incidental, consequential, and other damages and other legal and equitable relief,

as well as costs and attorneys' fees, available under law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Classes alleged herein, respectfully requests that the Court enter judgment in her favor and against Defendant as follows:

A. For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as the representatives for the Classes and Plaintiffs' attorneys as Class Counsel;

B. For an order declaring the Defendant's conduct violates the causes of action referenced herein;

C. For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

D. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E. For prejudgment interest on all amounts awarded;

F. For an order of restitution and all other forms of equitable monetary relief;

G. For injunctive relief as pleaded or as the Court may deem proper; and

H. For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all claims in this Complaint and of any and all issues in this action so triable as of right.

23

Dated: February 29, 2024

Respectfully Submitted,

*/s/ Blake G. Abbott*
Paul J. Doolittle (*Pro Hac Vice* forthcoming)
Blake G. Abbott (Fed ID #57190)
**POULIN | WILLEY |**
**ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: (803) 222-2222
Email: paul.doolittle@poulinwilley.com
blake.abbott@poulinwilley.com